## SMITH, STEBBINS & CO. v. ENGLE ET AL.

1. **Jurisdiction**: COURT OF LIMITED JURISDICTION. When the jurisdiction of a court of limited jurisdiction has once attached, its subsequent proceedings are presumed to be as regular as those of a court of general jurisdiction, and they cannot be collaterally impeached or attacked.

2. ——: ——: EXTENT OF POWERS. Having acquired jurisdiction, it has the right to decide all questions subsequently arising, and its decisions are binding and conclusive until reversed by some direct proceeding.

3. ——: BANKRUPTCY: COMPOSITION. That the bankrupt and two-thirds of the creditors in number and one-half in value signed a paper, reciting that a proposed composition was by them confirmed, instead of signing the resolution of composition, as required by the terms of the bankrupt act, was a mere irregularity which constitutes no proper ground of objection to the admissibility of the record in a proceeding in another court and would not affect the jurisdiction of the latter.

4. ——: ——: ——. The failure of the paper containing the assent of the creditors to a proposed composition to recite that it is signed by two-thirds of the creditors in number and one-half in value, cannot be made ground of attack in a collateral proceeding.

5. ——: ——: ——. If the District Court erred in approving the manner of payment under the composition, the error was properly reviewable only by the Circuit Court upon appeal.

6. ——: ——: DISCHARGE. A discharge in bankruptcy may be pleaded in another court, where it will be held conclusive until it be shown that the court granting it had not jurisdiction in the case.

7. ——: ——: DISCHARGE OF ATTACHMENT. An attachment upon the goods of one adjudged a bankrupt within four months after the levy may be discharged upon motion of the bankrupt, where a composition is effected before the appointment of the assignee; the bankrupt in such case having the same right in the premises as that conferred by the bankrupt act upon the assignee.

*Appeal from Buchanan Circuit Court.*

WEDNESDAY, OCTOBER 4.

The plaintiffs commenced this action on the second day of December, 1874, to recover of defendants the sum of $5,975.09. On the same day an attachment was issued

therein and levied upon the stock in trade of defendants, situated at Independence, Buchanan county, valued at $12,500. December 19, 1874, a petition in bankruptcy was filed in the District Court of the United States for the Northern District of Illinois against defendants, by certain of their creditors; and on December 29th they were adjudged bankrupts. On the 21st of December, 1874, before adjudication, a provisional assignee was appointed.

On the 24th day of December, the defendants filed their petition in said bankruptcy proceeding, praying that a meeting of their creditors be called under the direction of the court, for the purpose of a composition of their debts, in accordance with the amendment to the bankrupt law of June 22, 1874. Pursuant to this petition of the bankrupts, certain proceedings were had, and on the 4th day of June, 1875, the court ordered that Isaac Livingston be forever discharged from all debts and claims provable against his estate, which existed upon the 19th day of December, 1874, and which claims were properly scheduled by Isaac Livingston and Bernhard Engle, in their statement of liabilities, produced at the meeting of said creditors which accepted the composition. On the same day the same order was made respecting Bernhard Engle.

The sheriff, under said writ of attachment, retained possession of the property so levied upon, and, with the consent of appellees, sold from the same in the ordinary course of business until March 24, 1875, when appellees gave bond, in pursuance of the statute, conditioned for the performance of the judgment of the court in said cause, and an order was entered discharging the attached property, and directing its return to the defendants.

On November 2, 1875, the defendants filed their answer, setting up the composition proceedings and discharge as a defense, and asking that plaintiffs' suit be stayed and dismissed. The plaintiffs filed a reply, denying that they had knowledge or notice of the bankruptcy proceedings in any of its stages, and alleging that they sued out their attachment in good faith; that no assignee was ever appointed, and that the

attachment was not dissolved by the bankruptcy proceedings.

The cause was tried by the court, who rendered judgment for the defendants, and ordered that the attachment be discharged. Plaintiffs appeal.

*Jamison & Begun* and *John J. McClellan*, for appellants.

*J. S. Woodward* and *A. M. Pence*, for appellees.

DAY, J.—Upon the trial of the cause, the defendants admitted that at the time of the commencement of this action there was due plaintiffs from defendants, upon the demands set forth in the petition, the sum of $5,961.69.

The plaintiffs read in evidence the writ of attachment, the return of the sheriff, and a stipulation between plaintiffs and defendants that the sheriff might retain possession of the stock of goods levied on, that the same might be sold and the proceeds retained by the sheriff to be applied and disposed of under the direction of the court.

The defendants then offered in evidence a duly authenticated transcript of the record of certain proceedings in bankruptcy in the District Court of the United States for the Northern District of Illinois, against the defendants.

The plaintiffs objected upon various grounds, which were overruled, and the plaintiffs excepted. The plaintiffs expressly waive several of these objections.

The first objection upon which plaintiffs insist is, that " the record does not show that notice of the application of said bank-

1. JURISDIC-TION: court of limited jurisdiction. rupts to the court for an order directing the resolution of composition to be recorded, and the alleged statement of assets and debts to be filed, was given to the creditors, as directed by the court, or as required by law."

The bankrupt law of March 2, 1867, as amended and supplemented by the act of June 22, 1874, confers upon the District Court of the United States jurisdiction over the subject matter of bankruptcy, and of compositions with creditors.

It is conceded that this court is a court of limited jurisdic-

tion, and that the record must disclose facts necessary to confer jurisdiction in a particular case. But, when jurisdiction is shown to have attached, the subsequent proceedings of a court of limited jurisdiction are presumed as regular as those of a court of general jurisdiction, and its decision, whether correct or otherwise, upon every question properly arising in the case, is binding and conclusive until reversed on appeal. *Cooper v. Sunderland*, 3 Iowa, 114; *Long v. Burnett*, 13 Id., 28; *Davenport v. Schmidt*, 15 Id., 213; *Shawhan v. Loffer*, 24 Id., 217.

The transcript of the record shows that on December 19th, 1874, certain creditors of the defendants filed their petition in the District Court of the United States for the Northern District of Illinois, charging the defendants with certain acts of bankruptcy, and praying that they be adjudged bankrupts. Thus the general jurisdiction which was vested in this court over the subject of bankruptcy was properly invoked in this case. The court ordered the defendants to show cause, and the return of the marshal shows due service of the order upon them. Thus jurisdiction of the persons of defendants was properly acquired.

The record shows further, that on December 24, 1874, the defendants filed a petition in said bankruptcy proceedings, praying that a meeting of their creditors be called and held under the direction of the court, to consider a proposition of said defendants for a composition of their debts, to which was annexed a list of their creditors.

The court thereupon ordered that a meeting of the creditors of the bankrupts be held at a time and place specified, and that the register give notice of the time, place and purpose of the meeting, by sending a written or printed notice thereof, by mail, to each creditor named in the schedules of said debtors, at least ten days before the day appointed for said meeting.

The record recites " that the notice of the meeting of creditors at which said proposition for a composition was made by said bankrupts, was duly given more than ten days prior to said meeting to the creditors of said bankrupts, which notice

was in due form as required by law, and in accordance with the previous order of this court."

It is not claimed that this notice was not given as the record recites. That it was properly given seems to be conceded.

The bankrupt act, as amended June 22, 1874, provides that the creditors of an alleged bankrupt may resolve that a composition proposed by the debtor shall be accepted, in satisfaction of the debts due them. The act further provides that " such resolution, together with the statement of the debtor as to his assets and debts, shall be presented to the court, and the court shall, upon notice to all the creditors of the debtor of not less than five days, and upon hearing, inquire whether such resolution has been passed in the manner directed by this section; and if satisfied that it has been so passed, it shall, subject to the provisions hereinafter contained, and upon being satisfied that the same is for the best interest of all concerned, cause such resolution to be recorded and statement of assets and debts to be filed; and until such record and filing shall have taken place, such resolution shall be of no validity."

Now appellant, whilst conceding that proper notice was given to the creditors of the meeting at which the proposition for a composition was submitted, insists that the record shows that the notice subsequently given to the creditors of the hearing whether the resolution had been passed in the manner required by law, is improper and insufficient, and that consequently the court had no further jurisdiction in the premises, that its proceedings are void, and may be collaterally impeached.

The position is, we think, untenable. The petition of the debtors, that a meeting of creditors be called and held under the direction of the court to consider a proposition for composition, properly invoked the jurisdiction of the court over the subject matter. The due notice to the creditors of the time and place of holding this meeting conferred jurisdiction over the creditors, the persons interested in and to be affected by the proceeding. The court thus had jurisdiction over the subject matter and the parties, and the right to decide every subsequent question arising in the case. An incorrect decis-

ion might constitute error, for which the cause would be reversed upon appeal, but could not affect the jurisdiction, that is, take away the right to decide.

The power or jurisdiction of the court to pass upon a question, is a very different thing from the propriety or correctness in point of law of the determination. *The People v. Sturtevant*, 9 N. Y., 273; *Bangs v. Duckinfield*, 18 N. Y., 595; *Curtiss v. Brown*, 29 Ill., 231; *Morrow v. Weed*, 4 Iowa, 77; *Thompson v. Morris*, 57 Ill., 333.

The court, having acquired jurisdiction over the subject matter and of the parties, had the right to pass upon the suf-

2. ——: ——: ficiency of the subsequent notice of the hearing
extent of
powers.  whether the resolution had been properly passed, and an erroneous determination upon that question is binding until reversed by some direct proceeding. It does not render the entire action of the court void, and subject to collateral attack.

II. It is next objected that the record does not show that the resolution of composition was ever confirmed by the sig-

3. ——:bank- natures thereto of the bankrupts, or of any of their
ruptcy:·com-
position.  creditors, but shows that such confirmation was never had.

The statute requires that, to be operative, the resolution of composition shall be confirmed by the signatures thereto of the debtor, and two-thirds in number, and one-half in value of all the creditors of the debtor.

It is claimed that the record shows no resolution whatever, signed by the debtor or any of the creditors, and that the writing shown in the record does not answer the requirements of the statute. The record shows that a resolution was submitted at the meeting of creditors, and was acted upon, as follows: "*Resolved*, by the creditors at this meeting that we accept the composition so proposed, in full satisfaction of the unpreferred and unsecured debts due to us from said bankrupts. Which said resolution was unanimously adopted by said meeting, there being no opposition thereto by any creditor present."

The record further contains a recital of the fact, that a

proposition for composition was submitted by the bankrupts, at a meeting of creditors held January 22d, 1875, and states what that proposition was, and then proceeds as follows:

"Now, therefore, we, the undersigned, bankrupts, confirm said composition by our signatures, and we, the undersigned creditors, being over two-thirds in number and one-half in value of all the creditors of said bankrupts, do hereby confirm the action of the creditors at a meeting held on the 22d of January, 1875, to consider a proposition for a composition submitted by said bankrupts, and we hereby severally agree to accept from them in full discharge of our respective claims against them, the sum of forty-five cents on the dollar according to the proposition submitted, and the resolution above referred to."

This paper was signed by the bankrupts and certain of their creditors. The objection now made is that these signatures were not attached to the resolution itself. The objection is purely technical. Clearly the spirit of the provision is complied with when the bankrupt and the requisite number of creditors sign a paper, agreeing to the terms of the composition. The signing of this paper, instead of the resolution, at the most is a mere irregularity, and does not affect the jurisdiction of the court.

III.   The next objection urged is that "the paper writing inserted in the said transcript, purporting to be the assent in writing of the said bankrupts and certain of their creditors, to a proposed composition, does not show that the same was confirmed by the signatures thereto of two-thirds in number, and one-half in value of the creditors of said bankrupts, exclusive of those whose claims did not exceed $50."

The paper shows this, and more, for it states that those who signed it are over two-thirds in number, and one-half in value of *all* the creditors. . The paper stating this, it was for the court to determine whether the creditors signing it were two-thirds in number, and one-half in value.

The determination, even if erroneous, is binding until

reversed upon appeal or other mode of direct review. It cannot be questioned collaterally.

IV. The proposition of the bankrupts was to pay forty-five cents on the dollar of unsecured liabilities, as follows: fifteen $\frac{5. \quad : \quad}{}$ cents on each and every dollar in cash; fifteen cents in their notes due in five months, and fifteen cents in their notes due in ten months.

It is objected that " the offer of the bankrupts for said composition did not provide for payment *pro rata* in money to the unsecured creditors of said bankrupts, as required by law, and said court had no power to make any order whatever, approving a composition based upon the said offer of said bankrupts." This objection is like those we have been already considering.

The court had jurisdiction over the subject, and the right to determine the sufficiency and legality of the offer. If the court .erred in its determination, the proper remedy was to have it reviewed by the Circuit Court. The abstract shows that the case was so reviewed, and that the order of the District Court was affirmed.

V. The next objections to the introduction of the transcript of record, upon which appellants rely, are that "the resolution of composition with signatures of debtors, and requisite number of creditors thereto has never been recorded, neither has the resolution without such signature been recorded. And the record does not show that the alleged statement of assets and debts, has been filed, as directed by the court, nor does it show any statement of debts and assets filed in compliance with the order of the court."

The law provides that the court, upon being satisfied that the same is for the best interest of all concerned, shall cause such resolution to be recorded, and statement of assets and debts filed, and until such record and filing shall have taken place, such resolution shall be of no validity.

The transcript shows the following order: "Now, therefore, * * * it is ordered that said resolution * * * be recorded, but that no further record thereof shall be necessary than the enrollment and recording of this decree contain-

ing the resolution aforesaid; and it is further ordered that the said statement of the assets and debts of said bankrupts be filed among the records of this cause." We cannot see what further recording of the resolution could be necessary than to record the decree of the court, containing the resolution.

As to the filing of the statement of assets and debts, the decree directed it to be done, and the jurisdiction of the court being shown, the presumption, nothing appearing to the contrary, is that it was done as directed.

VI. It is further objected to the introduction of the record that "the statement of debts and assets set forth in the transcript does not contain the address of the plaintiffs, nor does it purport to do so."

The statement is headed "New York," followed by the names of twenty creditors.

Then occurs "Rochester N. Y.," followed by the names of three creditors. Then occurs "Boston," followed by the names of four creditors, including plaintiffs. Then occurs "Chicago," followed by the names of thirty-six creditors.

It is objected that this does not show the residence of plaintiffs. That it does not appear where Boston is, nor that plaintiffs live in Boston. A sufficient answer is, that this was a proper question for the court to determine, and the determination is, in this proceeding, binding.

The presumption is, proof was introduced that plaintiffs reside in Boston. If it was not, plaintiffs were not prejudiced if they do reside there, and it is not even suggested that they do not.

VII. The court, in addition to the orders made in the composition proceedings, executed to defendants a discharge in bankruptcy, purporting to discharge them from the debts and claims of certain creditors whose names are therein stated. The defendants offered this discharge in evidence. The plaintiffs objected that the discharge was not in the form or substance of such discharge as is provided for by the bankruptcy law of the United States, and that the said paper was incompatible with the pretended com-

6. ——: ——: discharge.

position which the defendants had pleaded and relied upon for a defense. The objection was overruled.

Appellants complain that, the theory of the composition proceedings is, that a valid composition is a satisfaction of the demands of all creditors. whose names, addresses, etc., appear upon the statement of debts, and none other, and that, to undertake the discharge of a demand already satisfied, is a work of supererogation, and to undertake the discharge of one not satisfied by reason of some defect in the composition proceeding, would be a mere usurpation of power. This may be admitted. Defendants rely upon the composition proceedings. We discover no defect in such proceedings. The discharge, therefore, may be admitted to be unnecessary and unavailing. If so, it worked no prejudice to appellants.

VIII. The last objection urged to the action of the court below is, that "the court erred in giving effect to the said proceedings in bankruptcy or some part thereof, as a bar to the plaintiffs' right to judgment for the amount of their demand in such form as the circumstances of the case required, for the reason that, at the time of filing the petition in said bankruptcy proceedings, and at the time of said alleged composition, the plaintiff's demand herein was fully secured by virtue of the attachment.lien, and said attachment lien was not impaired, neither was said attachment dissolved by said proceedings in bankruptcy."

7. ——: ——:
discharge of
attachment.

The attachment was levied on the 2d day of December, 1874. The petition in bankruptcy was filed on the 19th day of December, 1874. The Bankrupt Law, Revised Statutes, section 5044, provides that as soon as an assignee is appointed and qualified the judge or register shall convey to the assignee all the estate real and personal of the bankrupt, which shall vest the title to all such property in the assignee, although attached on *mesne* process as the property of the debtor and shall dissolve any such attachment made within four months next preceding the commencement of the bankruptcy proceedings. The acceptance by the creditors of the proposition for composition prevented the conveyance of the bankrupts' property to an assignee. Appellants claim that because no

such conveyance was made the lien of their attachment is not dissolved, and that they have the right to proceed to the recovery of a judgment, to be satisfied by a special execution against the attached property. This point was directly determined by the Court of Appeals of Maryland in *Miller v. McKenzie,* 13 B. R., 496. In this case it was held that after a resolution of composition has been duly adopted and confirmed, the debtor may have an attachment quashed that has issued against him within four months before the commencement of the proceedings in bankruptcy, for the debt is thereby extinguished. The court say: "There is not in this case any assignee to represent the debtor in the attachment suit, or to claim the property attached, or its proceeds, by virtue of the assignment. But the same reason which compels the State courts to recognize the authority of the courts in bankruptcy in cases of assignment, to-wit, the exclusive jurisdiction of those courts in matters of bankruptcy, must compel the State tribunals to respect the composition of creditors, adopted under the sanction of the courts of bankruptcy, in conformity with the provisions of the bankrupt law. The debt of the attaching creditors is extinguished by the composition, and the attachment, of course, falls to the ground."

Appellants cite the following cases under the English Bankrupt Act of 1869, upon which they rely: *Ex parte Sheriff of Middlesex, In re England,* Law Report, 12 Eq., 212; *Ex parte Lovering, In re Peacock,* Id., 17 Eq., 452; *Ex parte Rock, In re Hall,* Id., 6 Ch., 798; *Slater v. Pinder,* Id., 6 Exchq., 228; *Ex parte Birmingham Gas Light and Coke Co., In re Adams,* Id., 11 Eq., 204.

All these cases except the last are cases in which the judgment creditor having levied an execution before the institution of proceedings in bankruptcy was allowed to enforce it, notwithstanding the bankruptcy proceedings. The bankrupt law saved the rights of such parties, and the decisions are not applicable. The last case was one of composition under the 126th section of the bankrupt act. In that case it was held that the lien of a distress under a statutory power was not displaced by the subsequent resolving upon a composition by

the requisite majority of creditors. It is claimed by appellee that the difference between the 126th section of the English Act, and section 17 of the Act of Congress of June 22, 1874, is such that a decision under the former act does not aid in the construction of the latter.

Without entering upon an examination and determination of this question, we are content to follow the decision of the court of last resort of a sister State, believing it to be in entire harmony with the spirit and purpose of the bankrupt law as supplemented and amended. The judgment of the court below is

AFFIRMED.